Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

*Counsel to the Post-Effective Date Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |
| MARK ROCK HIGGINS, | |
| Plaintiff, | Adversary Proceeding No. 26-01028 |
| v. | |
| CELSIUS NETWORK LLC, *et al.*, | |
| Defendants. | |

**POST-EFFECTIVE DATE DEBTORS' MOTION TO DISMISS THE
ADVERSARY COMPLAINT FOR DETERMINATION OF OWNERSHIP,
CONSTRUCTIVE TRUST, AND TURNOVER, AND FOR RELATED RELIEF**

---

[1]    The Post-Effective Date Debtors in these chapter 11 cases, along with the last four digits of each Post-Effective Date Post-Effective Date Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Post-Effective Date Debtor Celsius Network LLC's principal place of business and the Post-Effective Date Debtors' service address in these chapter 11 cases is The Corporation Trust Company, Registered Office of Celsius Network, LLC, 1209 Orange Street, Wilmington, Delaware 19801.

The above-captioned post-effective date debtors (collectively, the "Post-Effective Date Debtors," and prior to the Effective Date, the "Debtors")[2] hereby file this motion to dismiss (the "Motion to Dismiss") the *Adversary Complaint for Determination of Ownership, Constructive Trust, and Turnover, and for Related Relief* [Adv. Docket No. 1] (the "Adversary Complaint"). In support of this Motion to Dismiss, the Post-Effective Date Debtors state as follows.

**Preliminary Statement**

1.      As in his previously filed motion,[3] Mr. Higgin essentially seeks one thing—the return of the Cryptocurrency assets Mr. Higgins deposited on the Celsius Platform. As a threshold matter, Mr. Higgins asserts that the Bankruptcy Court must determine the ownership of the assets he deposited on the Celsius Platform. However, the Bankruptcy Court has already made this determination, and it is not appropriate to revisit that determination at this time (over two years after the Plan became effective). Specifically, all of the Cryptocurrency Mr. Higgins deposited on the Celsius Platform were deposited into the Debtors' Earn Program. As such, the Bankruptcy Court already determined the ownership of these assets on January 3, 2023, in connection with the Bankruptcy Court's resolution of the Debtors' motion to determine the ownership of assets deposited into the Earn Program. *See Memorandum Opinion and Order Regarding Ownership of Earn Account Assets* [Docket No. 1822] (the "Earn Order"). Mr. Higgins has failed to allege why

---

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (as may be further modified, amended, or supplemented from time to time) (the "Plan"), as applicable.

[3]    *Motion of Mark Rock Higgins for Determination That Digital Assets Are Not Property of the Estate, for Imposition of Constructive Trust, and for Turnover* [Docket No. 8364] (the "Motion"). The Post-Effective Date Debtors filed an objection to the Motion. *See Post-Effective Date Debtors' Objection to Motion of Mark Rock Higgins for Determination That Digital Assets Are Not Property of the Estate, for Imposition of Constructive Trust, and for Turnover* [Docket No. 8387]. As of the filing of this Motion to Dismiss, the Motion remains outstanding.

the Bankruptcy Court should—and, to be clear, the Bankruptcy Court should not—reconsider its decision in the Earn Order regarding the ownership of such assets.

2.      Even absent the Earn Order, Mr. Higgins failed to timely file a Proof of Claim asserting such Claims, including Claims as to fraudulent inducement and rescission, by the applicable Bar Date.  As such, his Claims are forever barred, estopped, and enjoined by the Bar Date Order (as defined herein) and the Plan.  Nor would timely filing a Proof of Claim have preserved the claims set forth in Mr. Higgins's Adversary Complaint, because Mr. Higgins also failed to opt out of the Class Claim Settlement in connection with voting on the Plan.  As a result of his failure to opt out of the Class Claim Settlement, any such Proof of Claim would have been expunged and superseded by a new Claim for 105% of Mr. Higgins's scheduled Claim.  The Bar Date and Plan bar the Claims in the Adversary Complaint.

3.      For these reasons, and as more fully set forth herein, Mr. Higgins has failed to state a valid claim for relief, and the Bankruptcy Court should dismiss the Adversary Complaint.

**Jurisdiction**

4.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York, entered February 1, 2012.  The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

5.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.     The statutory bases for the relief requested herein are rule 12 of the Federal Rules of Civil Procedure (the "Federal Rules") and rule 7012 for the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Background**

**A.     Bar Date.**

7.     The Bankruptcy Court initially set 5:00 p.m. prevailing Eastern Time on January 3, 2023 (the "Initial Bar Date") as the deadline for non-governmental creditors to assert Proofs of Claim for all Claims and Interests, other than Administrative Claims. *See Order (I) Setting Bar Dates for Submitting Proofs of Claim, (II) Approving Procedures for Submitting Proofs of Claim, (III) Approving Notice Thereof, and (IV) Granting Related Relief* [Docket No. 1368] (the "Bar Date Order"). Notice of the Initial Bar Date was published in *USA Today*, *The New York Times*, and *CoinDesk* [Docket Nos. 1435, 1436, 1821].

8.     On January 10, 2023, at the Debtors' request, the Bankruptcy Court entered an order extending the Initial Bar Date to February 9, 2023. *See Order (I) Extending the Bar Dates for Submitting Proofs of Claim, (II) Approving Notice Thereof, and (III) Granting Related Relief* [Docket No. 1846]; *see also Debtors' Motion Seeking Entry of an Order (I) Extending the Bar Dates for Submitting Proofs of Claim, (II) Approving Notice Thereof, and (III) Granting Related Relief* [Docket No. 1803].

9.     On March 9, 2023, the Court issued the *Memorandum Opinion Regarding Which Debtor Entities Have Liability for Customer Claims Under the Terms of Use* [Docket No. 2205] (the "Account Holder Claims Opinion"), and found that the General Terms of Use, dated April 14, 2022 [Docket No. 393, Ex. A-8] provide that only Celsius Network LLC is liable to Account Holders on contract claims.

10.     As a result of the Account Holder Claims Opinion, the Debtors amended their Schedules of Assets and Liabilities and Statements of Financial Affairs to reflect that Account Holders held Claims against Celsius Network LLC.  Further, on March 24, 2023, the Debtors filed a notice further extending the bar date for affected Account Holders to April 28, 2023.  *See Notice of Amended Bar Date for Submission of Proofs of Claim* [Docket No. 2310].

11.     On April 21, 2023, the Debtors further extended the bar date for Account Holders pending resolution of the Class Claim.  *See Notice of Extension of Bar Date for Account Holders to Submit Proofs of Claim* [Docket No. 2516].

12.     On July 21, 2023, the Bankruptcy Court entered the joint stipulation between the Debtors and the Committee establishing 5:00 p.m. prevailing Eastern Time on August 2, 2023 (the "Final Bar Date") as the deadline for creditors to file Proofs of Claim against the Debtors.  *See Joint Stipulation and Agreed Order Between the Official Committee of Unsecured Creditors and the Debtors Establishing Account Holder Bar Date* [Docket No. 3066] (the "Bar Date Stipulation").

13.     On July 26, 2023, the Debtors filed the *Notice of Deadline for Submission of Account Holder Proofs of Claim in the Above-Captioned Chapter 11 Cases* [Docket No. 3090], which was served along with the Bar Date Stipulation on Account Holders, including Mr. Higgins. *See Affidavit of Service* [Docket No. 3247].

14.     Though Mr. Higgins attaches what purports to be a Proof of Claim as Exhibit C to the Adversary Complaint, Mr. Higgins fails to allege such Proof of Claim was filed, either before or after the Final Bar Date.  Further, the Debtors' records do not reflect such Proof of Claim was actually filed, let alone filed prior to the Final Bar Date, despite Mr. Higgins having more than thirteen months to file a Proof of Claim by the Final Bar Date.

B.      **Earn Account Litigation.**

15.     On November 11, 2022, the Debtors filed a motion seeking to establish the ownership of assets held in the Debtors' Earn Program (the "Earn Assets"). *See Debtors' Amended Motion for Entry of an Order (I) Establishing Ownership of Assets in the Debtors' Earn Program, (II) Permitting the Sale of Stablecoin in the Ordinary Course and (III) Granting Related Relief* [Docket No. 1325] (the "Earn Motion").

16.     On December 5, 2022, following a period for discovery, the Bankruptcy Court held a hearing regarding the Earn Motion. Prior to and during the hearing, both represented and *pro se* creditors were provided the opportunity to object to the relief sought through the Earn Motion and present arguments regarding the ownership of the Earn Assets. Mr. Higgins neither objected to the Earn Motion nor appeared at the hearing regarding the same.

17.     On January 4, 2023, the Bankruptcy Court entered the Earn Order, holding that the Earn Assets constitute property of the Debtors' Estates and reserving "creditor's rights with respect to various defense to and breach of contract claims." Earn Order at 45.

C.      **The Class Claim Settlement.**

18.     On August 14, 2023, the Bankruptcy Court entered an order approving the Class Claim Settlement. *See Order (I) Approving the Settlement By and Among the Debtors and the Committee with Respect to the Committee Class Claim and (II) Granting Related Relief* [Docket No. 3288] (the "Class Claim Settlement Order"). Pursuant to the Class Claim Settlement, creditors who did not affirmatively opt out of the Class Claim Settlement had any claims and/or causes of action set forth in a scheduled Claim, Proof of Claim, and/or the Class Claim expunged and superseded by a Claim for 105% of their scheduled Claim, other than Custody Claims. To opt out of the Class Claim Settlement, creditors had to check a box on their Ballot.

6

19.     Mr. Higgins has failed to allege that he opted out of the Class Claim Settlement, nor did he.  According to the Debtors' records, Mr. Higgins did not return a Ballot, let alone return a Ballot opting out of the Class Claim Settlement.

**D.      Confirmation of the Plan.**

20.     On August 17, 2023, the Bankruptcy Court entered an order approving the adequacy of the Disclosure Statement, approving the solicitation and voting procedures with respect to Confirmation, and setting certain deadlines, including the deadline to object to Confirmation of the Plan.  *See Order (I) Approving the Adequacy of the Debtors' Disclosure Statement, (II) Approving the Solicitation and Voting Procedures with Respect to Confirmation of the Debtors' Joint Plan of Reorganization, (III) Approving the Form of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, (V) Authorizing and Approving Reimbursement of Certain of the Plan Sponsor's Fees and Expenses, and (V) Granting Related Relief* [Docket No. 3337] (the "Disclosure Statement Order").

21.     Pursuant to the Disclosure Statement Order, any objections to Confirmation were due September 22, 2023, at 4:00 p.m. (prevailing Eastern Time).  Mr. Higgins did not file an objection to Confirmation, either before or after the deadline.

22.     The Confirmation Hearing began on October 2, 2023 at 2:00 p.m. (prevailing Eastern Time) and continued, on and off, through October 30, 2023.  During the Confirmation Hearing, parties in interest were permitted to argue against Confirmation of the Plan or otherwise object to their treatment under the Plan.  Mr. Higgins did not participate in the Confirmation Hearing.

23.     On November 9, 2023, the Bankruptcy Court entered an order confirming the Plan. *See Findings of Fact, Conclusions of Law, and Order Confirming the Modified Joint Chapter 11 Plan of Celsius Network LLC and Its Debtor Affiliates*.

7

**Argument**

**I.      Mr. Higgins Fails to State a Claim.**

24.      The Post-Effective Date Debtors seek dismissal of the Adversary Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable herein by Federal Rule of Bankruptcy 7012.  Rule 12(b)(6) requires dismissal of a claim when a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  For purposes of Rule 12(b)(6), the Bankruptcy Court must decide whether the facts alleged, if true, "state a claim to relief that is plausible on its face." *Watson Laboratories, Inc. v. Forest Laboratories Inc.*, 101 F.4th 223, [] (2d Cir. 2024) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  At a minimum, such allegations must "raise a right to relief above the speculative level." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "When the court can infer only a 'mere possibility of liability,' 'the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief.'" *Id.* (citing *Iqbal*, 556 U.S. at 679).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

25.      At its core, the Adversary Complaint seeks what many creditors have sought before (and which arguments the Bankruptcy Court has repeatedly rejected)—the return of their Earn Assets in full—by alleging that Mr. Higgins owns the assets he deposited on the Celsius Platform. *See* Adversary Complaint § VI.  Issues as to the ownership of Earn Assets and the treatment of resulting Claims, however, were already addressed through the Earn Order and the Plan and, thus, reconsideration of these issues is foreclosed.  Further, Mr. Higgins has not plausibly alleged any reason that these issues can and should be reconsidered by the Bankruptcy Court.  As such, Mr. Higgins is unable to state a claim for relief, and the Bankruptcy Court must dismiss the Adversary Complaint.

26.     Generally, the law of the case doctrine provides that "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case" unless "cogent and compelling reasons militate otherwise." *In re Motors Liquidation Co.*, 619 B.R. 63, 74 (Bankr. S.D.N.Y. 2020) (quoting *De Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009)). Such reasons include an "intervening change in law, availability of new evidence, or 'the need to correct a clear error or prevent manifest injustice.'" *DeJohnson*, 564 F.3d at 99–100 (quoting *United States v. Quintieri*, 306 F.3d 1217, 1230 (2d Cir. 2002)). As a result, the doctrine "forecloses reconsideration of issues that were decided—or that could have been decided—during prior proceedings in the same case." *United States v. Vale*, 596 F.App'x 34, 34 (2d Cir. 2015) (quoting *United States v. Williams*, 475 F.3d 468, 471 (2d Cir. 2007) (internal quotations omitted)); *see also Doe v. E. Lyme Bd. Of Educ.*, 962 F.3d 649, 662 (2d Cir. 2020) (stating the same). Courts will apply the law of the case doctrine when "prior decisions in an ongoing case either expressly resolved an issue or necessarily resolved it by implication." *Aramony v. United Way of Am.*, 254 F.3d 403, 410 (2d Cir. 2001) (citations omitted).

27.     Mr. Higgins's arguments regarding the ownership of the Earn Assets should be denied as foreclosed by the Earn Order. Mr. Higgins had a single account with Celsius—an account held as part of the Debtors' Earn Program. As such, his motion seeks to relitigate the exact issues decided by the Bankruptcy Court in the Earn Order. The Earn Order specifically addressed issues related to the ownership of the Cryptocurrency held in Celsius's Earn Program, holding that when a creditor deposited Cryptocurrency in the Earn Program, such creditor transferred all ownership interests in such Cryptocurrency to Celsius. *See* Earn Order at 41–42. Further, the Earn Program's terms of use "make[] it very clear that no ownership interest or lien in favor of the Account Holders was intended." Earn Order at 41. As such, the Bankruptcy Court

found "that Earn Assets in Earn Accounts constitute property of the Estates," directly ruling on the exact issue Mr. Higgins raises in the Motion. Earn Order at 45. In the Adversary Complaint, Mr. Higgins fails to allege any intervening change in law, new evidence, clear error, or manifest injustice that would support the Bankruptcy Court revisiting its ruling in the Earn Order.

28. Mr. Higgins's claims regarding the treatment of his Earn Claims are also foreclosed by the Plan. Pursuant to the Plan, Holders of Earn Claims are entitled to receive their "Pro Rata share of (a) the Liquid Cryptocurrency Distribution Amount, (b) the MiningCo Common Stock, (c) Litigation Proceeds, and (d) the Illiquid Recovery Rights." Plan Art. III.B.5. As a result of the fourth distribution, Holders of Earn Claims received a cumulative distribution in Cash or Liquid Cryptocurrency equal to approximately 72.1% of the value of such creditor's Claims as of the Petition Date. *See Notice Regarding Fourth Plan Distribution* [Docket No. 8314]. Further distributions may be announced in the future. Mr. Higgins did not object to this treatment in connection with Confirmation, and instead effectively attempts to rewrite the Plan solely as to his treatment more than two years after the Effective Date, and long after any applicable appeal periods for the Confirmation Order have run. Further, Mr. Higgins has failed to allege any intervening change in law, new evidence, clear error, or manifest injustice that would require the Bankruptcy Court to revisit its ruling in the Confirmation Order.

29. Finally, Mr. Higgins's other claims in the Adversary Complaint, including claims for fraudulent inducement and recission, must be denied as barred by the Bar Date Order and the Plan. Despite attaching what appears to be a page from a Proof of Claim as Exhibit C to the Adversary Complaint, Mr. Higgins does not allege that he submitted a Proof of Claim in

accordance with the procedures set forth in the Bar Date Order by the Final Bar Date, nor did he.[4]

As such, pursuant to both the Bar Date Order and the Plan, Mr. Higgins is "forever barred, estopped, and enjoined" from asserting Claims not timely submitted through a Proof of Claim or otherwise excepted from the requirements of the Bar Date Order. *See* Bar Date Order ¶ 6 ("In accordance with Bankruptcy Rule 3003(c)(2) and the Guidelines, any holder of a Claim that is not excepted from the requirements of the Bar Date Order and fails to timely submit a Proof of Claim in the appropriate form shall be forever barred, estopped, and enjoined from (a) asserting such Claim against the Debtors and their chapter 11 estates . . ."); Plan Art. VII.A ("Except as otherwise provided herein, all Proofs of Claim Filed after the earlier of:  (x) the Effective Date or (y) the applicable claims Bar Date shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Debtor or Post-Effective Date Debtor . . .").

30.    Even if Mr. Higgins had timely filed a Proof of Claim regarding the allegations in the Adversary Complaint, Mr. Higgins failed to allege that he opted out of the Class Claim Settlement, nor did he, and thus any Proof of Claim would have been expunged.  Specifically, the Class Claim Settlement provides that a Proof of Claim filed by an Account Holder who does not opt out of the Class Claim Settlement "shall be expunged and superseded by" a Claim for 105% of such creditor's scheduled Claim (other than Custody Claims, which shall not be expunged). *Order (I) Approving the Settlement by and Among the Debtors and the Committee with Respect to the Committee Class Claim and (II) Granting Related Relief* [Docket No. 3288], Ex. 1 ¶ 3(b).  As a result, by failing to opt out of the Class Claim Settlement, any Proof of Claim filed by

---

[4]    The litigation referenced in Exhibit C to the Adversary Complaint, *Higgins v. Blinken, et al.*, Case No. 1:22-cv-09714 (LTS), is unrelated to the Debtors or their Chapter 11 Cases, nor were the Debtors named as defendants therein.

Mr. Higgins would be unenforceable and he would be foreclosed from pursuing any Claims alleged therein.

31.     Through the Adversary Complaint, Mr. Higgins fails to point to "any intervening change in law, availability of new evidence, or the need to correct a clear error or prevent manifest injustice" which would require the Bankruptcy Court to reconsider the Earn Order, the Bar Date Order, the Class Claim Settlement Order, or the Plan, and as such the Adversary Complaint should be dismissed.

## II.     Even If the Relief Sought by Mr. Higgins Was Not Procedurally Barred, He Is Not Entitled to the Relief Sought.

32.     The same arguments that underly the Earn Order apply here.[5]  Mr. Higgins does not allege that he was not bound by the Debtors' terms of use (the "Terms of Use"), nor can he. A contract requires an offer and acceptance (mutual assent), consideration, and an intent to be bound.  *See Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004) (reciting the requirements for formation of a contract).  These requirements are not different for electronic contracts.  *See id.* at 403 ("While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract.").

33.     Here, Mr. Higgins entered into a contract with the Debtors governed by the Term of Use through a "clickwrap" agreement, which required him to manifest assent by clicking a button confirming that he accepted the terms, or a button that implies that he has accepted the terms.  Mr. Higgins received consideration in the form of the "financing fee from Celsius, referred to as 'Rewards,' in the form of Digital Assets . . . in exchange for entering into open-ended loans of your Eligible Digital Assets to Celsius under the terms hereof."  Terms of Use § 4.D.  Finally,

---

[5]     The Post-Effective Date Debtors incorporate by reference the Earn Motion.

there is no evidence that Mr. Higgins did not intend to be bound by the Terms of Use nor does he allege that the Terms of Use should not apply to him. In fact, he does not address the Terms of Use in his Motion at all.

34.     The Terms of Use, however, are clear—Account Holders, including Mr. Higgins, "grant[ed] Celsius . . . all right and title to [Cryptocurrency used in the Earn Program], including ownership rights[.]" Terms of Use § 13. Put another way, Account Holders agreed that they "will not be able to exercise rights of ownership" with respect to Cryptocurrency in the Earn Program. *Id.* Finally, Account Holders agreed that, "[i]n the event that Celsius becomes bankrupt, enters liquidation or is otherwise unable to repay its obligations, any Eligible Digital Assets used in the Earn [Program] . . . may not be recoverable, and you may not have any legal remedies or rights in connection with Celsius' obligations to you other than your rights as a creditor of Celsius under any applicable laws." *Id.* As such, the Cryptocurrency Mr. Higgins deposited into the Earn Program is property of the Debtors' Estates and properly treated through the Plan.

35.     That certain of the assets Mr. Higgins held through the Debtors' Earn Program are themselves purportedly secured does not change this fact, and the Bankruptcy Court has denied motions raising similar arguments. *See Order Denying Nicole Barstow's Motions to be Considered a Secured Creditor* [Docket No. 1832] ("For the reasons discussed in the Earn Opinion, as an Earn Account holder, Barstow is not a secured creditor.") (citing Earn Opinion at 30).

36.     For the reasons set forth herein, the Bankruptcy Court should dismiss the Adversary Complaint.

New York, New York
Dated:  May 15, 2026

*/s/ Joshua A. Sussberg*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:            joshua.sussberg@kirkland.com

 - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:            patrick.nash@kirkland.com
                     ross.kwasteniet@kirkland.com
                     chris.koenig@kirkland.com

*Counsel to the Post-Effective Date Debtors*