Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

*Counsel to the Post-Effective Date Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |
| MARK ROCK HIGGINS, | |
| Plaintiff, | Adversary Proceeding No. 26-01028 |
| v. | |
| CELSIUS NETWORK LLC, *et al.*, | |
| Defendants. | |

**POST-EFFECTIVE DATE DEBTORS'**
**REPLY IN SUPPORT OF MOTION TO DISMISS THE**
**ADVERSARY COMPLAINT FOR DETERMINATION OF OWNERSHIP,**
**CONSTRUCTIVE TRUST, AND TURNOVER, AND FOR RELATED RELIEF**

---

[1]   The Post-Effective Date Debtors in these chapter 11 cases, along with the last four digits of each Post-Effective Date Post-Effective Date Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Post-Effective Date Debtor Celsius Network LLC's principal place of business and the Post-Effective Date Debtors' service address in these chapter 11 cases is The Corporation Trust Company, Registered Office of Celsius Network, LLC, 1209 Orange Street, Wilmington, Delaware 19801.

The above-captioned post-effective date debtors (collectively, the "Post-Effective Date Debtors," and prior to the Effective Date, the "Debtors")[2] hereby file this reply in response to *Plaintiff's Opposition to Motion to Dismiss* [Docket No. 3] (the "Objection") and *Plaintiff's Supplemental Memorandum of Law in Support of Rule 2004 Examination, Limited Discovery, Evidentiary Hearing, and Denial of Dismissal* [Docket No. 4] (the "Memorandum of Law") filed by Mark Higgins and in further support of the *Post-Effective Date Debtors' Motion to Dismiss the Adversary Complaint for Determination of Ownership, Constructive Trust, and Turnover, and for Related Relief* [Docket No. 2] (the "Motion to Dismiss"). In further support of the Motion to Dismiss, the Post-Effective Date Debtors state as follows.

### Preliminary Statement

1.     Mr. Higgins asserts that the Court must determine ownership of the assets he deposited into the Debtors' Earn Program, and argues that his claims are immune from the requirements of the Bar Date Order, the Class Claim Settlement, and the Plan because they implicate section 541(d) of the Bankruptcy Code. Mr. Higgins is wrong. The Court has already ruled that all of the assets deposited into the Debtors' Earn Program are property of the Debtors' Estates. *See* Earn Order at 30. The Adversary Complaint provides no basis for why the Court should reconsider its ruling. Mr. Higgins seeks a determination from the Court regarding the ownership of certain stablecoins in his Earn Account, a threshold issue that the Court already resolved through the Earn Order. The Earn Order was entered after a lengthy trial which garnered the participation of hundreds of creditors. Not only did Mr. Higgins not object during the Earn

---

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion to Dismiss or *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (as may be further modified, amended, or supplemented from time to time) (the "Plan"), as applicable.

trial, he did not file a Proof of Claim to preserve his claim or object to confirmation of the Plan. Now, nearly two and a half years after the Court has determined ownership of the Earn Assets, he requests determination of the ownership of his assets and discovery into the same.  The Motion to Dismiss explains why this request has long been barred by the Earn Order, the Bar Date Order, the Class Claim Settlement, and the Confirmation Order.

2.       Mr. Higgins' argument that section 541(d) is somehow an exception to this well-settled "law of the case" should be overruled.  He does not cite any legal authority for why a claim pursuant to section 541(d) could proceed, and the Court should reject this argument.  If a creditor could now argue (well over two years after the Plan became effective) the ownership of its Earn assets, without ever having filed a proof of claim, opted out of the Class Claim Settlement, or objected to the Plan, that would effectively create a backdoor loophole in the Bar Date Order, the Earn Order, and the Plan for any creditor to re-litigate core ownership issues that were decided years ago.

3.       For these reasons, and those set forth below and in the Motion to Dismiss, the Adversary Complaint should be dismissed.

## Reply

**I.       The Adversary Complaint Does Not Adequately Plead a Claim for Relief.**

4.       To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), which is made applicable to adversary proceedings by Bankruptcy Rule 7012(b), "a complaint must set out only enough facts to 'state a claim for relief that is plausible on its face.'"  *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 557 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

5.      Further, Federal Rule of Civil Procedure 9, made applicable to adversary proceedings by Bankruptcy Rule 7009, requires a party alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9. As such, a party pleading a fraud claim must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *In re Roman Catholic Diocese of Rockville Centre, New York*, 650 B.R. 58, 75 (Bankr. S.D.N.Y. 2023) (quoting *Eternity Global Master Fund Ltd. V. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 186–87 (2d Cir. 2004)). To explain why a statement is fraudulent, a party must "demonstrate with specificity why and how that is so." *Id.*

6.      The Adversary Complaint is devoid of factual support for Mr. Higgins' various claims, and accordingly, the Adversary Complaint must be dismissed. Essentially, Mr. Higgins asserts that he had an Earn Account that contained USDC, PAXG, and CEL Token and that he deposited assets on the Celsius Platform in reliance on representations by Alexander Mashinsky, the Debtors' former Chief Executive Officer. *See* Adversary Complaint at 2. The remainder of the assertions in the Adversary Complaint are "threadbare recitals of the elements of a cause of action" without any factual support other than conclusory statements. *Iqbal*, 556 U.S. at 678. For example, in his argument that the Debtors were custodians of the assets he deposited on the Celsius Platform, Mr. Higgins simply states, "[t]he Debtors acted as custodians or bailees." Adversary Complaint at 3. This is a conclusory statement, unsupported by any facts, nor does Mr. Higgins reference any agreement or other facts pursuant to which the Debtors would be treated as custodians or bailees (which is particularly notable given the Earn Opinion's ruling that the

4

Debtors owned the assets in the Earn accounts). Further, in his argument regarding fraudulent inducement and rescission, Mr. Higgins alleges only that he "deposited and maintained assets in reliance on [the] representations [of Mr. Mashinsky]." Adversary Complaint at 4. He does not allege what statements Mr. Mashinsky made on which he relied with any reasonable particularity, let alone the heightened level of particularity required for claims based on fraud.

7.      Mr. Higgins has also not met his burden in support of his section 541(d) argument. Section 541(a) of the Bankruptcy Code provides that, except as otherwise provided in the statute, "all legal or equitable interests of the debtor in property as of the commencement of the case" constitutes property of the estate. 11 U.S.C. § 541(a). One such exception, section 541(d), provides that "[p]roperty in which the debtor holds . . . only legal title and not an equitable interest . . . becomes property of the estate . . . only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d). To successfully assert a claim that an asset is not property of the estate under section 541(d), the movant must establish that the debtor held only bare legal title to the property without any equitable interest whatsoever as of the commencement of the bankruptcy case. *See In re Sturman*, 222 B.R. 694, 714 (Bankr. S.D.N.Y. 1998). The movant bears the burden of proving complete absence of equitable interest—a very high bar. *See In re Borison*, 226 B.R. 779, 785 (Bankr. S.D.N.Y. 1998) (requiring the movant to make a "facially sufficient showing" to support exclusion of property from the debtor's estate under section 541(d)).

8.      Instead, he simply concludes that "[i]f the Debtors possessed only bare legal title without equitable ownership, the assets never fully entered the estate under [section] 541(d)" such that "plan-based creditor provisions cannot independently create ownership where none existed." Objection at 3. His hypothetical statements are not supported by law or fact and would circumvent

the Court's ruling in the Earn Order. The Court determined that all Earn Assts are property of the Debtors' Estates because the Terms of Use that Account Holders accepted constituted a valid, enforceable contract which accorded title to and ownership of the Earn Assets to the Debtors. *See* Earn Order at 39 ("Thus, the Court finds that title to and ownership of all Earn Assets unequivocally transferred to the Debtors and became property of the Estates on the Petition Date."). Given that the Court has already ruled that Earn Assets are property of the Debtors' Estates, the Debtors' equitable ownership of Mr. Higgins' tokens (which were all deposited in the Earn Program) cannot be a threshold issue as he suggests.

9.      For these reasons, the Court should dismiss the Adversary Complaint for failure to state a claim upon which relief can be granted.

**II.      Even if the Adversary Complaint Did Adequately Plead a Claim for Relief, Mr. Higgins' Claims are Barred.**

10.      Neither the Objection nor the Memorandum of Law resolve the Adversary Complaint's other fatal flaw—that the claims alleged by Mr. Higgins have already been addressed by the Court through the Earn Order, and are barred by the Bar Date Order, the Class Claim Settlement, and the Plan.

11.      Critically, the Bar Date Order required Mr. Higgins to assert any and all claims through a Proof of Claim prior to the Bar Date. *See* Bar Date Order ¶ 6 ("In accordance with Bankruptcy Rule 3003(c)(2) and the Guidelines, any holder of a Claim that is not excepted from the requirements of the Bar Date Order and fails to timely submit a Proof of Claim in the appropriate form shall be forever barred, estopped, and enjoined from (a) asserting such Claim against the Debtors and their chapter 11 estates . . ."). The Bar Date Order intentionally defines "claim" broadly in the terms of section 101(5) and requires that claims for all "right[s] to payment" and "right[s] to an equitable remedy" be filed by the Bar Date. Bar Date Order, Exhibit C (Revised

Bar Date Notice). Mr. Higgins does not allege that he filed any timely Claim. As such, Mr. Higgins is barred from asserting such Claims against the Debtors and their Estates.

12. Even if Mr. Higgins had timely filed a Proof of Claim, he failed to opt out of the Class Claim Settlement, which was incorporated into the Plan. The Class Claim Settlement resolved all non-contractual Claims related to fraud, misrepresentation, and similar causes of action against the Debtors. Holders of such Claims were required to opt out of the Class Claim Settlement if they wished to pursue such Claims on their own; creditors who did not timely opt out received a 5% increase to the amount of their scheduled Claims. Mr. Higgins did not opt out. Accordingly, as a Class Claim Settlement participant, Mr. Higgins received a 5% increase in the dollar value of his scheduled Claims in settlement of any other Claims that Mr. Higgins could assert through a Proof of Claim, including non-contractual claims. As such, Mr. Higgins cannot properly assert the Claims set forth in the Adversary Complaint.

13. Mr. Higgins' main response to the issue of the Bar Date and the Class Claim Settlement is that his claims implicate section 541(d) of the Bankruptcy Code, which he argues can proceed despite the requirements of the Bar Date Order and the Class Claim Settlement because such claims relate to ownership. Objection at 2. This argument comes over two and a half years too late and his reliance on section 541(d) of the Bankruptcy Code as a purported loophole to those requirements is misplaced. Specifically, Mr. Higgins asserts, without any citation, that the Adversary Proceeding should survive the Earn Order and the Bar Date Order because it "presents a threshold ownership dispute under 11 U.S.C. § 541(d)." Objection at 2. Mr. Higgins is wrong; his claims are barred by the Bar Date Order, the Class Claim Settlement, and the doctrine of *res judicata*, and he has pointed to no authority excepting out section 541(d) of the Bankruptcy Code from those requirements.

14.  Finally, it is well settled that "*res judicata* operates to preclude parties from 'raising claims that they could have . . . but failed to raise before confirmation.'"  *In re Arcapita Bank B.S.C.(c)*, 520 B.R. 15, 22 (Bankr. S.D.N.Y. 2014) (quoting *In re Indesco Intern., Inc.*, 354 B.R. 660, 664 (Bankr. S.D.N.Y. 2006)).  The Court's determination that Earn Assets are property of the Debtors' Estates was resolved by the Earn Order in January 2023 and reiterated in the Confirmation Order in November 2023.  As the Court found in the Earn Order, "an understanding of what constitutes property of the estate is central to determining the distribution to creditors in any plan of reorganization." *Id.* at 23.  The Earn Order is clear.  It determined that there was a valid contract between Account Holders and the Debtors and that such contract "unambiguously transferred all right and title to [such] assets to Celsius."  Earn Order at 44.  While it is true that the Court left open the issue related to recission of the Terms of Use, the Court specifically deferred that issue to the claims resolution process.  *See* Earn Order at 45.[3]

15.  Mr. Higgins' arguments in his Adversary Complaint are identical to those made by other Account Holders as part of the Earn trial and related litigation.  Critically, Mr. Higgins has not even attempted to preserve this cause of action to be litigated post-confirmation—not prior to the Earn ruling, not prior to confirmation, not even by filing a proof of claim against the Debtors. *See In re Residential Capital, LLC*, 508 B.R. 838, 847 (Bankr. S.D.N.Y. 2014) (holding that a creditor who did not file a proof of claim or object to confirmation was bound by the res judicata effect of the confirmed plan and could not later pursue such claims).  "Under the doctrine [of *res judicata*], questions concerning the treatment of any creditor under the plan, discharge of liabilities, or disposition of property, may no longer be raised after plan confirmation." *Id*. at 847–48.  Mr. Higgins cannot re-litigate the Earn Order. *See In re Motors Liquidation Co.*,

---

[3]  As noted above, Mr. Higgins failed to timely file a Proof of Claim.

619 B.R. 63, 74 (Bankr. S.D.N.Y. 2020) ("The law of the case doctrine provides that 'when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case' unless 'cogent and compelling reasons militate otherwise.'") (quoting *De Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009)).  Because Mr. Higgins has demonstrated no reason to deviate from the Earn Order, to allow him to do so would not only violate the law of the case doctrine—it would undermine over three years of progress the Debtors, and now the Plan Administrator, have made since the Earn Order was entered.

16.     Mr. Higgins is also incorrect that the allegedly collateralized nature of PAXG sufficiently differentiates his Claim from those addressed by the Earn Order.  Another Account Holder raised such arguments in October 2022.  *See Motion to Consider Stablecoin Creditors as Secured Creditors* [Docket No. 965].  In denying such motion, the Court relied on the Earn Order to hold that such Account Holder was not a secured creditor on account of the stablecoins deposited in such creditor's Earn Account.  *See Order Denying Lucas Holcomb's Motion to be Considered a Secured Creditor* [Docket No. 1831] (the "Holcomb Order") ("For the reasons discussed in the Earn Opinion, as an Earn Account Holder, [such creditor] is not a secured creditor.").  Mr. Higgins deposited cryptocurrency into an Earn Account.  The Earn Order is clear about the legal ramifications of that action—it transferred all right, title and interest in such cryptocurrency to the Debtors.  *See* Earn Order at 42–43.  That holding is true regardless of any purported backing of such cryptocurrency by other assets.  *See* Holcomb Order.

17.     Mr. Higgins did not take the necessary steps to preserve his claims during the pendency of the bankruptcy, and he has not alleged any sufficient basis to challenge the Court's long-settled ruling that Earn Assets are property of the Debtors' Estates.  Accordingly, it cannot be the case that the Debtors have complete absence of equitable interest in assets that are property

9

of their estates. To allow the Adversary Complaint to proceed would allow an inequitable back door to the Bar Date Order, Class Claim Settlement, Earn Order and Plan, and would encourage further litigation over ownership of Earn Assets when a claimant failed to timely preserve these arguments as required by the Bar Date Order and Class Claim Settlement.

18. For these reasons, the Court should overrule the Objection and dismiss the Adversary Proceeding.

## III. Discovery is Not Appropriate Under Bankruptcy Rule 2004.

19. While Bankruptcy Rule 2004(a) provides that "[o]n motion of any party in interest, the court may order the examination of any entity," the "pending proceeding rule" provides an exception to the broad scope of discovery under Bankruptcy Rule 2004. Fed. R. Bankr. P. 2004(a). Pursuant to the pending proceeding rule, if an adversary proceeding or a contested matter is pending in the bankruptcy case, parties to that proceeding or matter must seek discovery under Bankruptcy Rules 7026 through 7037 (with certain exceptions and additions specified in Bankruptcy Rule 9014) rather than the liberal provisions of Bankruptcy Rule 2004. *See In re National Assessment, Inc.*, 547 B.R. 63, 65 (Bankr. W.D.N.Y. 2016); *In re Bennett Funding*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996). Permitting a party to seek discovery pursuant to Bankruptcy Rule 2004 when it is related to a pending proceeding is inappropriate because it may circumvent the safeguards and protections of the Federal Rules of Civil Procedure. *See In re Enron Corp.*, 281 B.R. 836, 841 (Bankr. S.D.N.Y. 2002) ("Based on [Bankruptcy] Rule 2004's substantive differences, courts have expressed concern that Rule 2004 examinations not be used as a tactic to circumvent the safeguards of the Federal Rules of Civil Procedure."). Mr. Higgins elected to initiate an adversary proceeding. As such, discovery must proceed, if at all, under Bankruptcy Rules 7026 through 7037. Pursuant to Federal Rule of Civil Procedure 26(d), made applicable to adversary proceedings by Bankruptcy Rule 26, no party may seek discovery before

the parties have conferred as required by Federal Rule of Civil Procedure 26(f).  Fed. R. Civ. P. 26(d).  As such, any discovery at this time would be improper.

20.　　Moreover, discovery is not warranted because the Adversary Complaint should be dismissed on the legal merits as set forth herein.  Courts in this district have consistently held "that a stay of discovery is appropriate pending resolution of a potentially dispositive motion where the motion appear[s] to have substantial grounds, or stated another way, do[es] not appear to be without foundation in law." *Johnson v. N. Y. Univ. School of Educ.*, 205 F.R.D. 433, 434 (S.D.N.Y. 2002) (citing *In re Currency Conversion Fee Antitrust Litigation*, 2002 WL 88278, at *1 (S.D.N.Y. Jan. 22, 2002) (quoting *Chrysler Capital Corp. v. Century Power Corp.*, 137 F.R.D. 209, 209–10 (S.D.N.Y. 1991)) (citing *Flores v. Southern Peru Copper Corp.*, 203 F.R.D. 92, 2001 WL 396422, at *2 (S.D.N.Y. Apr. 19, 2001); *Anti-Monopoly, Inc. v. Hasbro, Inc.*, 1996 WL 101277, at *2 (S.D.N.Y. Mar. 7, 1996)).  Where "adjudication of [a] pending motion to dismiss may obviate the need for burdensome discovery," any request for discovery should be stayed.  *Id.*  Here, where the Adversary Complaint is devoid of dispositive facts in support of its allegations and should be dismissed as violative of the Bar Date Order and Class Claim Settlement, discovery is improper. The Post-Effective Date Debtors reserve all rights related to potential discovery, including as to the timing of the same.

21.　　For the reasons set forth herein, the Court should dismiss the Adversary Complaint.

[*Remainder of page intentionally left blank.*]

11

New York, New York
Dated:  May 26, 2026

/s/ Joshua A. Sussberg

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          joshua.sussberg@kirkland.com

 - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          patrick.nash@kirkland.com
                ross.kwasteniet@kirkland.com
                chris.koenig@kirkland.com

*Counsel to the Post-Effective Date Debtors*