: Mark-Rock: Higgins
10642 WEST SOUTHERN
TOLLESON, ARIZONA 85353
(602) 315-4763
Rockzz7@icloud.com

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

In re:

**CELSIUS NETWORK LLC**, et al.,

Debtors.

Chapter 11
Case No. 22-10964 (MG)

_____/

**MARK ROCK HIGGINS,**

**Plaintiff,**

v.

CELSIUS NETWORK LLC, et al.,

Defendants.

**Adversary Proceeding No. 26-01028**

_____/

## PLAINTIFF'S LIMITED SUR-REPLY REGARDING
## RULE 9(b),
## FRAUD-INDUCED RESCISSION,
## INDIVIDUALIZED OWNERSHIP ISSUES,
## AND EXCLUSION FROM ESTATE PROPERTY
## UNDER 11 U.S.C. §541(d)

Plaintiff Mark Rock Higgins ("Plaintiff"), appearing pro se and in personam, respectfully submits this Limited Sur-Reply regarding Defendants' Motion to Dismiss and states as follows:

## I. PRELIMINARY STATEMENT

This adversary proceeding presents unresolved issues concerning:

• fraud-induced rescission;
• equitable ownership;
• tokenized bullion custody;
• constructive trust;
• traceability;
• individualized ownership interests;
• and exclusion from estate property under 11 U.S.C. §541(d).

Plaintiff does not seek generalized unsecured creditor treatment or ordinary plan-distribution recovery.

Rather, Plaintiff asserts a distinct ownership dispute concerning identifiable and traceable digital assets, including:

• PAX Gold ("PAXG");
• CEL Token;
• USDC;
• and related digital assets maintained upon the Celsius platform.

Plaintiff alleges that Celsius leadership materially misrepresented:

• platform solvency;
• customer asset safety;
• liquidity conditions;
• operational integrity;
• and support and valuation of the CEL token.

Plaintiff relied upon those representations in maintaining and retaining assets upon the Celsius platform.

Subsequent criminal proceedings involving Alex Mashinsky established materially misleading conduct and manipulation relating to Celsius operations and the CEL token market.

Accordingly, Plaintiff asserts that any purported transfer of equitable ownership arising from such fraud-induced relationship is voidable and subject to rescission.

## II. THE PRIOR EARN ORDER DID NOT FULLY ADJUDICATE PLAINTIFF'S INDIVIDUALIZED RESCISSION AND OWNERSHIP CLAIMS

Defendants improperly attempt to collapse unresolved individualized rescission and ownership issues into generalized Earn Program treatment.

The prior Earn Order addressed generalized Earn Program treatment under ordinary contractual assumptions.

The present adversary proceeding asserts materially distinct ownership theories grounded in:

• fraud-induced rescission;
• tokenized bullion custody;
• constructive trust;
• traceable ownership interests;
• and exclusion from estate property under 11 U.S.C. §541(d).

Those issues were never actually adjudicated as applied to Plaintiff's individualized PAX Gold holdings.

Plaintiff specifically asserts that fraud-induced rescission prevents conclusive establishment of equitable ownership as applied to Plaintiff's assets.

Accordingly, generalized references to prior Earn Program rulings do not independently resolve Plaintiff's individualized ownership dispute.

## III. PLAINTIFF PLAUSIBLY ALLEGES FRAUD-INDUCED RESCISSION UNDER RULE 9(b)

Plaintiff alleges that Celsius leadership materially misrepresented:

• Celsius solvency;
• customer asset safety;

• liquidity conditions;
• platform integrity;
• and support and valuation of CEL tokens.

Plaintiff further alleges that Celsius users were encouraged to maintain CEL token holdings to obtain enhanced platform benefits and yield structures while Celsius leadership manipulated and materially misrepresented the operational condition of the Celsius platform and CEL token market support.

Plaintiff relied upon those representations in maintaining:

• PAX Gold holdings;
• CEL token holdings;
• USDC;
• and related digital assets upon the Celsius platform.

Had Plaintiff known the true financial and operational condition of Celsius, Plaintiff would not have continued maintaining assets upon the platform under the same conditions.

At minimum, Plaintiff has plausibly alleged facts sufficient to require factual development prior to dismissal under Rule 12(b)(6).


## IV. PAX GOLD PRESENTS A DISTINCT CUSTODIAL COMMODITY ISSUE

PAX Gold materially differs from ordinary speculative cryptocurrency deposits.

Each PAXG token represents:

one fine troy ounce of physical gold held in custody.

Accordingly, PAXG functions analogously to:

• warehouse receipts;
• bullion custody certificates;
• and custodial commodity interests.

Under UCC §7-207 and longstanding warehouse-law principles:

• commingling does not destroy ownership;
• depositors retain proportional ownership interests;
• and custodians do not acquire beneficial title merely through possession.

The United States Supreme Court recognized analogous principles in:

Union Trust Co. v. Wilson

where possession by a warehouse or custodian did not itself transfer ownership of deposited property.

Accordingly, Celsius's possession of Plaintiff's PAX Gold-related interests does not conclusively establish equitable ownership.

## V. SECTION 541(d) REQUIRES OWNERSHIP ANALYSIS BEFORE GENERALIZED PLAN TREATMENT

Under 11 U.S.C. §541(d):

"Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest… becomes property of the estate only to the extent of the debtor's legal title."

Plaintiff does not seek recovery upon a generalized unsecured creditor claim against the estate.

Rather, Plaintiff asserts exclusion from estate property under 11 U.S.C. §541(d) based upon individualized ownership, rescission, traceability, and custodial commodity interests concerning identifiable digital assets.

Accordingly, generalized plan-confirmation provisions, claims-bar procedures, unsecured creditor treatment, and creditor-distribution mechanisms do not independently resolve whether Plaintiff's identifiable assets validly entered the estate in the first instance.

## VI. FACTUAL DEVELOPMENT IS NECESSARY

Material factual disputes remain unresolved concerning:

• inducement;

• reliance;
• custody characterization;
• traceability;
• wallet allocation;
• commingling;
• and equitable ownership.

The Debtors maintain exclusive possession and control over substantial portions of the relevant:

• custody records;
• tracing analysis;
• wallet allocation records;
• blockchain allocation information;
• and internal ledger mapping.

Without such factual development, Plaintiff cannot fully establish ownership tracing and the Court cannot conclusively determine equitable ownership as a matter of law.

The present proceeding therefore cannot properly be resolved solely through generalized reference to prior Earn Program rulings.

## VII. LIMITED DISCOVERY AND EVIDENTIARY DEVELOPMENT ARE WARRANTED

Plaintiff respectfully requests limited discovery concerning:

• wallet allocation;
• tracing analysis;
• custody documentation;
• blockchain allocation records;
• and internal ledger mapping.

Plaintiff further requests evidentiary hearing concerning:

• ownership;
• rescission;
• custody characterization;
• traceability;

• and equitable ownership.

The requested discovery is narrow, targeted, and directly related to the threshold ownership issues presently before the Court.

### III. CONCLUSION

The Motion to Dismiss improperly attempts to characterize Plaintiff's adversary proceeding as merely another generalized Earn Account recovery claim.

It is not.

This proceeding presents unresolved individualized issues concerning:

• fraud-induced rescission;
• tokenized bullion custody;
• constructive trust;
• traceable ownership;
• equitable ownership;
• and exclusion from estate property under 11 U.S.C. §541(d).

At minimum, Plaintiff has plausibly alleged facts sufficient to require factual development concerning:

• rescission;
• inducement;
• reliance;
• custody structure;
• traceability;
• and equitable ownership.

Accordingly, dismissal under Rule 12(b)(6) would be improper.

Plaintiff respectfully requests that the Court:

1. deny the Motion to Dismiss;

2. permit limited discovery;

3. permit evidentiary development;

4. permit production of custody and tracing records;

5. permit supplementation of the record following discovery;

6. schedule evidentiary hearing; and

7. grant such further relief as justice requires.

Dated: May 27, 2026

Respectfully submitted,

*/s/:Mark-Rock: Higgins*

Mark Rock Higgins
Plaintiff / Movant
10642 WEST SOUTHERN
TOLLESON, ARIZONA 85353
(602) 315-4763
Rockzz7@icloud.com

: Mark-Rock: Higgins
10642 WEST SOUTHERN
TOLLESON, ARIZONA 85353
(602) 315-4763
Rockzz7@icloud.com

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

In re:

**CELSIUS NETWORK** LLC, et al.,

Debtors.

Chapter 11
Case No. 22-10964 (MG)

_____/

MARK ROCK HIGGINS,

Plaintiff,

v.

CELSIUS NETWORK LLC, et al.,

Defendants.

Adversary Proceeding No. **26-01028**

_____/

**DECLARATION OF MARK ROCK HIGGINS
IN SUPPORT OF PLAINTIFF'S LIMITED SUR-REPLY,
OPPOSITION TO MOTION TO DISMISS,
LIMITED DISCOVERY,
AND EVIDENTIARY HEARING**

I, Mark Rock Higgins, declare under penalty of perjury pursuant to 28 U.S.C. §1746 as follows:

## I. DECLARANT

1. I am the Plaintiff in this adversary proceeding.

2. I have personal knowledge of the facts stated herein and, if called as a witness, could and would testify competently thereto.

3. This Declaration is submitted in support of Plaintiff's Limited Sur-Reply, Opposition to Motion to Dismiss, request for limited discovery, request for evidentiary hearing, and assertion that certain assets are excluded from estate property under 11 U.S.C. §541(d).

## II. CELSIUS ACCOUNT AND DIGITAL ASSETS

4. I maintained a Celsius account containing digital assets including PAX Gold ("PAXG"), CEL Token ("CEL"), and USDC.

5. My account holdings and related transaction activity are reflected within records including:

  • account screenshots;
  • transaction histories;
  • account verification records;
  • platform communications;
  • and related correspondence previously filed within this adversary proceeding.

6. True and correct copies of such records have previously been produced and/or identified in connection with this proceeding.

## III. PAX GOLD HOLDINGS

7. At all relevant times, I understood **PAX Gold** ("**PAXG**") to represent:

**one fine troy ounce of physical gold held in custody per token.**

8. Based upon the structure and representations associated with PAX Gold, I understood such holdings to function as custodial commodity interests rather than ordinary unsecured lending interests.

9. I did not knowingly intend to permanently transfer beneficial ownership of physical gold-backed custodial interests to Celsius for unrestricted proprietary ownership or speculative use.

10. I understood PAX Gold to operate more similarly to a custodial commodity or warehouse-related asset structure than ordinary speculative cryptocurrency deposits.

## IV. RELIANCE UPON CELSIUS REPRESENTATIONS

11. I relied upon representations made by Celsius and Celsius leadership concerning:

  • platform solvency;
  • customer asset safety;
  • liquidity;
  • operational integrity;
  • and support and value of CEL tokens.

12. Celsius and its leadership represented that the platform was safe, financially stable, and appropriate for continued maintenance of customer assets.

13. Celsius and its leadership further promoted the CEL token and encouraged customer participation and retention of assets within the Celsius platform through enhanced platform benefits and yield structures.

14. I maintained and retained assets within Celsius in reliance upon those representations.

15. Had I known the true operational condition and financial circumstances of Celsius, I would not have continued maintaining assets upon the Celsius platform under the same conditions.

## V. FRAUD-INDUCED RESCISSION

16. Subsequent criminal proceedings involving Alex Mashinsky established materially misleading conduct concerning Celsius operations and CEL token support.

17. Based upon such materially misleading conduct, I dispute that any valid transfer of equitable ownership occurred concerning my PAX Gold holdings and related digital assets.

18. To the extent any purported transfer of ownership is alleged, I elect rescission arising from materially misleading inducement and reliance.

19. I further assert that Celsius retained, at most, bare legal title insufficient to establish complete equitable ownership under 11 U.S.C. §541(d).

## VI. TRACEABILITY AND ACCOUNT RECORDS

20. My assets remain identifiable and traceable through records including:

- transaction histories;
- account records;
- internal ledger systems;
- blockchain tracing;
- and wallet allocation information maintained by Celsius.

21. Celsius and the Post-Effective Date Debtors maintain exclusive possession and control over substantial portions of the relevant:

- custody documentation;
- internal ledger mapping;
- wallet allocation records;
- tracing analysis;
- and account-level allocation records.

22. I do not possess independent access to those internal records.

23. Without production of those materials, I cannot fully establish:

- custody structure;
- wallet allocation;
- beneficial ownership tracking;
- or complete tracing analysis.

## VII. NEED FOR DISCOVERY AND EVIDENTIARY DEVELOPMENT

24. Material factual disputes remain unresolved concerning:

- custody versus ownership;
- traceability;
- commingling;
- internal ledger allocation;
- beneficial ownership;
- rescission;
- and constructive trust issues.

25. The requested discovery and evidentiary development are necessary to permit factual determination concerning those issues.

26. I seek limited and targeted discovery directly related to:

- ownership;
- custody;
- allocation;
- tracing;
- and wallet structure.

27. I do not seek broad discovery unrelated to the threshold ownership issues presently before the Court.

## VIII. FINANCIAL HARDSHIP

28. The assets at issue constituted a substantial portion of my savings and financial reserve.

29. My inability to access those assets has materially impaired my financial condition and ability to pay litigation-related costs.

30. The inability to access the disputed assets is itself a substantial cause of my present financial hardship.

IX. CONCLUSION

31. I respectfully request that the Court:

- deny dismissal;
- permit limited discovery;
- permit evidentiary development;
- permit production of custody and tracing records;
- permit supplementation of the record following discovery;
- and grant such further relief as justice requires.

**I declare under penalty of perjury under the laws of the United States of America
that the foregoing is true and correct.**

Executed on this 27th day of May, 2026.


*/s/:Mark-Rock: Higgins*

: Mark-Rock: Higgins .
  Plaintiff / Movant

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

CELSIUS NETWORK LLC, et al.,

Debtors.

Chapter 11
Case No. 22-10964 (MG)

_____/

MARK ROCK HIGGINS,

Plaintiff,

v.

CELSIUS NETWORK LLC, et al.,

Defendants.

Adversary Proceeding No. **26-01028**

_____/

**CERTIFICATE OF SERVICE**

I, Mark Rock Higgins, certify under penalty of perjury under 28 U.S.C. §1746 that on this 27th day of May, 2026, I caused true and correct copies of the following documents to be served:

• Plaintiff's Limited Sur-Reply Regarding Rule 9(b), Fraud-Induced Rescission, Individualized Ownership Issues, and Exclusion from Estate Property Under 11 U.S.C. §541(d);

• Declaration of Mark Rock Higgins in Support of Plaintiff's Limited Sur-Reply, Opposition to Motion to Dismiss, Limited Discovery, and Evidentiary Hearing;

• Plaintiff's Motion for Evidentiary Hearing, Limited Discovery, and Production of Custody, Ledger, and Traceability Records;

• Proposed Order;

• Exhibit Index;

upon the following parties by electronic mail and/or United States Mail:


KIRKLAND & ELLIS LLP
Counsel for Celsius Network LLC, et al.
601 Lexington Avenue
New York, New York 10022

Joshua A. Sussberg, Esq.
joshua.sussberg@kirkland.com

Patrick J. Nash, Jr., Esq.
patrick.nash@kirkland.com

Ross M. Kwasteniet, Esq.
ross.kwasteniet@kirkland.com

Christopher S. Koenig, Esq.
christopher.koenig@kirkland.com

Dan Latona, Esq.
dan.latona@kirkland.com

CelsiusCreditorQuestions@kirkland.com


WHITE & CASE LLP
Counsel for the Official Committee of Unsecured Creditors
1221 Avenue of the Americas
New York, New York 10020

Steven O. Weise, Esq.


OFFICE OF THE UNITED STATES TRUSTEE
United States Department of Justice
One Bowling Green, Room 534
New York, New York 10004

STRETTO
Claims and Noticing Agent
410 Exchange, Suite 100
Irvine, California 92602

https://cases.stretto.com/celsius

Service was made by:

[X] Electronic Mail /Clerk of Court's E-File

[  ] First-Class United States Mail

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: May 27, 2026

Respectfully submitted,

*/s/:Mark-Rock: Higgins*

:Mark-Rock: Higgins
Plaintiff / Movant
10642 WEST SOUTHERN
TOLLESON, ARIZONA 85353
(602) 315-4763
Rockzz7@icloud.com